UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RONALD KAREEM SEABROOKS**, | **2:19-CV-12406-TGB** |
| Petitioner, | |
| vs. | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING CERTIFICATE OF APPEALABILITY** |
| **PATRICK WARREN**, | |
| Respondent. | |

Ronald Kareem Seabrooks ("Petitioner") is in the custody of the Michigan Department of Corrections pursuant to convictions for first-degree premeditated murder, felony murder, assault with intent to murder, three counts of torture, three counts of unlawful imprisonment, two counts of mutilation of a dead body, and possession of a firearm during the commission of a felony. Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.

The petition raises twelve claims for relief. Respondent argues that seven claims are procedurally defaulted and that all claims are

meritless.  For the reasons set forth, the Court finds that Petitioner is not entitled to relief on his claims and the petition will be denied.  The Court also denies a certificate of appealability and grants leave to proceed *in forma pauperis* on appeal.

## I.   Facts and Procedural History

The Michigan Court of Appeals outlined the circumstances leading to Petitioner's convictions as follows:

> These appeals arise from a double homicide tied to events occurring on April 29, 2012, at 15324 Cruse St. in Detroit.  The murder victims were identified as Michael Bostick and Kyra Jordan.  Michael Bostick died as a result of two gunshot wounds.  One bullet was recovered from Jordan's body.  The bodies of both victims were burned post-mortem, resulting in such substantial charring that Bostick incurred an amputation of his lower extremities attributed to thermal injury.  The use of dental records was necessary to substantiate Jordan's identification by the medical examiner.  A third victim, Lester Lewis, incurred a gunshot wound to the face, but was able to escape while being transported in the trunk of the vehicle that was later used to immolate the other two victims.

*People v. Seabrooks*, No. 320320, 2015 WL 7574325, at *2 (Mich. Ct. App. Nov. 24, 2015).

Petitioner was tried along with co-defendant Keith Williams before a jury in Wayne County Circuit Court.  Petitioner was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); felony

murder, Mich. Comp. Laws § 316(1)(b); assault with intent to commit murder (AWIM), Mich. Comp. Laws § 750.83; three counts of torture, Mich. Comp. Laws § 750.85(1); three counts of unlawful imprisonment, Mich. Comp. Laws § 750.349b(1); two counts of mutilation of a dead body, Mich. Comp. Laws § 750.160; and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. On January 17, 2014, he was sentenced to life in prison for the murder convictions, 20 to 40 years for the AWIM conviction, 20 to 40 years for each torture conviction, 7 to 15 years for each unlawful imprisonment conviction, 5 to 10 years for each mutilation of a dead body conviction, and 2 years for the felony-firearm conviction.

Petitioner's convictions were affirmed on direct appeal. *People v. Seabrooks*, No. 320320, 2015 WL 7574325, at *2 (Mich. Ct. App. Nov. 24, 2015), lv. den. 499 Mich. 969.

Next, Petitioner filed a motion for relief from judgment in the trial court. The trial court denied the motion. *See* Op. & Order, *People v. Seabrooks*, No. 13-007631-01 (Wayne County Cir. Ct. Apr. 23, 2018) (ECF No. 12-22). The Michigan Court of Appeals denied leave to appeal, *People v. Seabrooks*, No. 345112 (Mich. Ct. App. Dec. 28, 2018), as did the

Michigan Supreme Court, *People v. Seabrooks*, 504 Mich. 902 (Mich.2019).

Petitioner has now filed the pending habeas corpus petition which raises these grounds for relief:

I. Whether or not the trial court impermissibly invaded the province of the jury by classifying the complainants as actual victims thereby piercing the veil of judicial impartiality ultimately depriving petitioner of his right to a neutral and impartial judge.

II. Whether or not counsel completely failed to investigate the prosecution's case by failing to engage in routine preparation; counsel's inability to subject the prosecution's case to meaningful adversarial testing was complete resulting in the constructive denial of counsel warranting the presumption of prejudice.

III. Whether or not petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when counsel allowed the trial to proceed in the presence of only 11 jurors resulting in one of the jurors not receiving all of the evidence.

IV. Whether or not petitioner was deprived of his Sixth Amendment right to a public trial when the public was arbitrarily expelled from the courtroom during the jury voir dire/selection, resulting in structural error.

V. Whether or not petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel ultimately resulting in his being deprived of his right to be tried before a properly instructed jury.

4

VI. Whether or not petitioner was deprived of his Sixth Amendment right to a public trial when the public was expelled from the courtroom during the middle of the trial, resulting in structural error.

VII. Whether or not petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel where counsel completely failed to investigate and interview any of petitioner's codefendants who would have testified favorably on petitioner's behalf.

VIII. Whether or not the trial court invaded the province of the jury and pierced the veil of judicial impartiality by endorsing the witnesses' in-court identifications by ruling that the record reflect the witnesses' alleged identification of petitioner.

IX. Whether or not petitioner was deprived of his federal constitutional due process right to present a defense when the trial court excluded evidence of Lester Lewis' statements to petitioner.

X. Whether or not petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel in connection with his direct appeal of right and thereby has good cause to excuse by procedural default.

XI. Whether or not petitioner's Sixth Amendment confrontation right was violated and the state court abused its discretion by allowing the prosecutor's opening statement to comment on what his cooperating codefendant may testify and say by using part of his plea statement. The trial court should have declared a mistrial and petitioner is entitled to a writ of habeas corpus.

XII. Whether or not the petitioner was denied effective assistance of trial counsel when trial counsel failed to make important objections and investigate to have tainted evidence

excluded for petitioner to have a fair trial; petitioner is entitled to a writ of habeas corpus.

Respondent has filed an answer in opposition arguing that several of Petitioner's claims are procedurally defaulted.  Under the doctrine of procedural default, a federal court generally may not review claims that a habeas petitioner has defaulted in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  But the procedural default doctrine is not jurisdictional and the Court may bypass this question where proceeding directly to the merits is more efficient.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority ..., if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  The Court finds proceeding directly to the merits is more efficient.

## II.  Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254.  To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show

6

that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited

to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Discussion

### A.    Judicial Misconduct (Claims I and VIII)

In his first claim, Petitioner contends that the trial court's repeated references to Bostick and Jordan as "victims" evidenced judicial bias and invaded the province of the jury.  In his eighth claim, he maintains that the trial court improperly invaded the province of the jury by "endorsing" witnesses' identifications of Petitioner as the perpetrator.

### 1.

With respect to Petitioner's claim that the trial court improperly referred to the complainant as a "victim," the trial court held that, although the term "victim" should not have been used, the court did not invade the province of the jury by doing so nor did this show judicial bias. (ECF No. 12-22, PageID.2185.)  The trial court further explained: "[t]he issue in this case was not whether the decedents/complainants were in fact killed or injured but whether [Seabrooks] caused their deaths or injuries." *Id.*

The state court's opinion was not contrary to or an unreasonable application of Supreme Court precedent.   An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  Petitioner did not dispute that Bostick and Jordan were the victims of murder, but claimed that he was not involved in their murders. Thus, there is no plausible basis for concluding that the trial judge acted in a biased way simply by using the term "victim" or that Petitioner suffered any prejudice.

## 2.

Petitioner also asserts that the court invaded the province of the jury and denied him his right to a fair and impartial judge when the trial judge confirmed for the record that prosecution witnesses pointed at Petitioner when they were asked by the prosecutor to identify the perpetrator.

The trial court rejected this claim because the court merely ordered the record to reflect two witnesses' identification of Petitioner in court and did not verify or endorse the identifications.  (ECF No.12-22, PageID. 2184.)  Petitioner cites no Supreme Court case prohibiting this routine practice and the Court is aware of none.   The trial court's holding,

therefore, cannot be contrary to, or an unreasonable application of, Supreme Court precedent.

## B.  Ineffective Assistance of Counsel (Claims II, III, V, VII, XII)

Petitioner raises multiple ineffective assistance of counsel claims: (1) counsel's failure to engage in routine trial preparation, including his failure to interview codefendants who would have testified favorably in his defense, resulted in the constructive denial of counsel; (2) counsel failed to ensure the jury was properly instructed; and (3) counsel failed to raise important objections and to move for the exclusion of tainted evidence.

An ineffective assistance of counsel claim has two components: the attorney's performance was deficient and the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

A petitioner need not demonstrate *Strickland's* prejudice prong where the circumstances arising in the case "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Prejudice will be presumed where a defendant is denied the assistance of counsel at a critical stage in the proceedings. *Id.* at 659.

**1.**

Petitioner's second and seventh claims concern defense counsel's trial preparation.  In his second claim, Petitioner argues that counsel failed to interview any prosecution witnesses before trial rendering counsel unprepared and unable to subject the prosecutor's case to meaningful adversarial testing.  Petitioner contends that counsel's failure amounted to the constructive denial of counsel and, therefore, that prejudice should be presumed.

The trial court denied this claim because, other than Petitioner's bare assertion that counsel was unprepared for trial, there was no evidence on the record to support the claim.  (ECF No. 12-22, PageID.2181-82.)  Petitioner's claim, as presented in his petition, suffers from the same fatal shortcoming.  As he did in state court, Petitioner simply states his position without establishing that counsel, in fact, failed to talk to any witnesses and without alleging what was lost by counsel's alleged failure, such as lines of questioning which counsel failed to pursue because of the failure to investigate.  On this record, Petitioner fails to show that counsel's lack of preparation amounted to the constructive denial of counsel because there was no "collapse of the adversarial

system." *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (presumption of prejudice is applied only where "the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear") (quotation omitted).

Petitioner's conclusory allegations are also inadequate to show that the trial court's denial of this claim was contrary to, or an unreasonable application of, *Strickland*. *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir.2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings); *see also Workman v. Bell*, 178 F.3d 759, 771 (6th Cir.1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief). He asserts no evidence to support a finding of prejudice.

In his seventh claim, Petitioner maintains that counsel was ineffective for failing to interview his codefendants. Petitioner claims his codefendants would have been willing to testify and their testimony would have been exculpatory. But Petitioner presented no affidavits or other evidence in the state courts (or in this Court) to support his claim. In the absence of any such offering, Petitioner is unable to establish that counsel erred or that he suffered prejudice. *Tinsley v. Million*, 399 F.3d

796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petition did not "introduce[] affidavits or any other evidence establishing what they would have said.").

**2**.

In his third claim, Petitioner argues that counsel was ineffective for failing to object when the court allowed the trial to proceed in the presence of only eleven jurors.  Petitioner cites this portion of the trial transcript:

Deputy Darrisaw:  All rise for the jury.

 (At 1:38 p.m., juries enter/seated)

The Court: All right, for the record ll of our jurors are present.

(ECF No. 12-8, PageID.743.)

Petitioner raised this claim for the first time in his state-court motion for relief from judgment.  The trial court held that the claimed reference to eleven jurors was "either a misstatement by the trial court or a typo by the stenographer" and that counsel, therefore, was not ineffective.  (ECF No. 12-22, PageID.2182.)  The record clearly supports this determination.

14

A careful examination of the transcript and comparison of individual characters and numbers shows that "ll" represents two lowercase "L"s, not the number 1. This supports a finding that the stenographer simply failed to fully transcribe the word "all." Further, this interpretation is also supported by the rest of the record. The trial judge consistently noted on the record that all jurors were present each time court resumed. And, in one instance where a juror was momentarily absent, proceedings did not resume until all jurors were present. (*See* ECF No. 12-13, PageID.1457.)

In sum, Petitioner failed to present clear and convincing evidence to rebut the trial court's holding that the trial did not proceed in the absence of a juror. The transcript supports this holding. Petitioner, therefore, has failed to show that trial counsel was ineffective in failing to object.

**3.**

Petitioner maintains that counsel should have requested five additional jury instructions. First, Petitioner argues that counsel failed to request an instruction directing the jury not to use evidence that he was a drug dealer as substantive evidence of guilt.

15

The trial court held that trial counsel reasonably could have decided not to request a limiting instruction in an "attempt to downplay [Petitioner's] involvement in drug trafficking," (ECF No. 12-22, PageID.2183.) Without doubt, limiting instructions "inevitably invite the jury's attention to matters the defendant normally prefers not to emphasize." *Ferguson v. Knight*, 809 F.2d 1239, 1243 (6th Cir. 1987). *See also United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006) ("There is a paradoxical impossibility in asking an individual not to think about a particular fact, because that very request calls attention to the fact that is to be ignored.").

The court also held that Petitioner was not prejudiced by the absence of a limiting instruction. (ECF No. 12-22, PageID.2183.) The Court agrees that, even assuming that counsel's decision not to request a limiting instruction rose to the level of deficient performance, Petitioner has failed to show a reasonable probability that, but for the lack of limiting instruction, the outcome of the trial would have been different. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."); *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1079 (6th Cir.

2015) ( "a defense counsel's failure to request -- or a trial court's failure to give -- even an appropriate limiting instruction will not require reversal where other evidence in the record supports conviction").

The trial court applied the same reasoning to Petitioner's claim that trial counsel should have moved for a flight instruction, holding that it was reasonable trial strategy. Indeed, Michigan's standard jury instruction regarding flight states "a person may …run or hide because of a consciousness of guilt." Mich. CJI2d 4.4. Defense counsel could have reasonably concluded the flight instruction would not benefit the defense.

Likewise, the trial court reasonably concluded that Petitioner was not prejudiced by the absence of an alibi instruction because the jury was properly instructed that the prosecution had to prove each element of the crimes.   (ECF No. 12-22, PageID.2183.) *See United States v. McCall*, 85 F.3d 1193 (6th Cir. 1996) (holding that omission of an alibi instruction is not plain error "as long as the jury is otherwise correctly instructed concerning the government's burden of proving every element of the crimes charged").

Petitioner also argues that counsel should have requested an instruction regarding eyewitness identification.   Although counsel did

not request a specific instruction on evaluating eyewitness testimony, the trial court gave a general instruction on witness credibility, which advised jurors to consider many factors in assessing witness credibility including whether the witness could see clearly, how long the witness was watching, potential distractions for the witness, whether the witness appeared to have a good memory, and a witness's potential motives for testifying. This general instruction adequately guided the jury in its consideration of the reliability of identification testimony. Petitioner has failed to show that counsel's failure to request a specific eyewitness identification instruction resulted in prejudice.

Finally, Petitioner argues that counsel should have requested the standard instruction that a joint trial was not evidence of his own guilt. The trial court held that, even if counsel erred in not requesting the instruction, Petitioner was not prejudiced because "the court did previously instruct the jury to consider each defendant's cases separately in light of the evidence" and the evidence of guilt was overwhelming. (ECF No. 12-22, PageID.2184.)

The Court finds that the denial of this claim was not contrary to, or an unreasonable application of, *Strickland*. The trial court instructed the

jury: "Remember that you must consider each defendant separately." (ECF No. 12-16, PageID.2063.)   And:   "You should consider each defendant separately.   Each one is entitled to have his case decided on the evidence and the law that applies to him." (*Id.* at 2073.)   Additionally, the trial court instructed the jury on the presumption of innocence and the prosecutor's burden of proof.   Taken together, these instructions were sufficient to inform the jury that each defendant should be considered separately and that the prosecution had to satisfy its burden of proof for each element of each crime with respect to each defendant.

**4.**

In his last ineffective assistance of counsel claim, Petitioner argues that counsel was ineffective for failing to review pre-trial discovery and file a motion to suppress illegally seized evidence, failing to object to evidence technician Lori Briggs' testimony, quoting Demar Payne's statement, and failing to provide Petitioner with a copy of the discovery packet.   The Michigan Court of Appeals did not unreasonably apply clearly established federal law when it denied these claims on direct review.

19

First, the Michigan Court of Appeals held that counsel was not ineffective for failing to file a motion to suppress evidence seized from the Cruse Street home because the evidence was properly admitted under state law. This Court must defer to the Michigan Court of Appeals' state law evidentiary ruling. *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). Because the evidence was admissible under state law, and counsel cannot be found ineffective for failing to make futile objections, this claim is meritless. *See Altman v. Winn*, 644 Fed. App'x 637, 644 (6th Cir. 2016).

Next, Petitioner argues that defense counsel should have objected to evidence technician Lori Briggs' testimony that she collected suspected blood samples from the Cruse Street home because the samples were not tested to confirm that they were blood and no DNA connection was made to the victims or defendants. The Michigan Court of Appeals held that counsel's failure to object was a reasonable trial strategy:

> [I]t was arguably a matter of trial strategy by defense counsel not to emphasize or draw attention to the suspected blood evidence. By not challenging the evidence and the failure to secure testing of the substance, defense counsel was able to avoid definitive proof that a shooting occurred within the home through incontestable identification of a victim's blood at that location. Instead, given the uncertainty of the substance samples procured by Briggs, defense counsel could focus on the credibility of the prosecution's witnesses without having physical evidence to verify their testimony, thereby

> avoiding the proverbial final nail in the coffin for Seabrooks
> and Williams.

*Seabrooks*, 2015 WL 7574325, at *16.

The Michigan Court of Appeals' decision is a reasonable application of *Strickland* to the facts of this case. Thus, Petitioner fails to demonstrate that habeas relief is warranted on this claim.

Next, Petitioner claims that counsel was ineffective in referencing Payne's statement suggesting that Williams stated, "I don't normally shoot girls, but sorry" and in failing to obtain a mistrial on that basis. (ECF No. 12-8, PageID.650.) That statement, however, was made outside the presence of the jury. As such the Michigan Court of Appeals reasonably concluded that Petitioner could not demonstrate prejudice. *Seabrooks*, 2015 WL 7574325, at *16.

Finally, Petitioner contends that counsel was ineffective for failing to provide him with a discovery packet which, in turn, prevented him from assisting in his defense. The Michigan Court of Appeals denied this claim because the "vague allegation" lacked "any factual allegations or support." *Id.* The state court record confirms the court of appeals' characterization of this claim. The denial of this claim was reasonable.

21

## C.  Right to a Public Trial (Claims IV, VI)

Petitioner argues that his right to a public trial was violated in two separate instances – during jury selection and midway through the trial. Respondent argues these claims are procedurally defaulted, waived and meritless.

### 1.

Petitioner's first public trial claim concerns voir dire.  He argues that the public and press were excluded during the jury selection process. Petitioner, however, admits that "the record is silent" on this matter. (ECF No. 1, PageID.28.)   He claims that in the middle of the jury selection, "the trial judge announced that she had earlier barred 'people that were waiting in the gall[e]ry' from the courtroom purportedly due to a lack of adequate space."  (ECF No. 1, PageID.28.)

Petitioner raised this claim in his post-conviction motion for relief from judgment.   The trial court denied the claim with the following explanation:

> Defendant argues that he was denied his Sixth Amendment right to a public trial when the trial court closed the courtroom to the public and press during voir dire based on limited space. Defendant further asserts that [the] trial court's decision to close the courtroom was not placed on the record until after the public and the press were allowed to

22

return, which prohibited Defendant from placing an objection to the Court's closure on the record.

The Sixth Amendment to the United States Constitution and article I, § 20 of the Michigan Constitution provides a defendant with the right to a public trial. *People v. Vaughn*, 491 Mich. 642, 650 (2012). The United States Supreme Court in *Wal[l]er v. Georgia*, 467 U.S. 39 (1984), established four requirements to support a courtroom closure. The *Wal[l]er* Court held that:

> (1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure.

467 U.S. at 48 (quoted in *People v. Kline*, 197 Mich App 165, 169 (1992)).

In *People v. Kline*, the Court noted that *Wal[l]er* addressed the requirements for total closures of the courtroom and did not necessarily govern partial closures. 197 Mich. App. at 169-170. "Because the effect of a partial closure does not reach the level of total closure, only a substantial, rather than a compelling, reason for the closure is necessary." *Id.* at 170. However, the *Kline* Court still applied the same four requirements listed in *Wal[l]er*.

The Michigan Court of Appeals has held that a defendant is not prejudiced by the trial court's partial closure of the courtroom to the public and press during voir dire because of limited space. "The limited capacity of the courtroom was a substantial reason for the closure, and thus, this partial closure did not deny defendant his right to a public trial." *People v. Russell*, 297 Mich. App. 707, 720 (2012).

23

Even if the trial court stated its reasons for partially closing the courtroom prior to initiating said closure, the result would not have changed.  Further, Defendant has not established that he was actually prejudiced by the partial closure in that there is not a reasonable likelihood that but for the closure Defendant would have had a chance of acquittal. Since Defendant has not established actual prejudice under MCR 6.508(D)(3), the Court cannot grant the relief Defendant seeks.

(ECF No. 12-22, PageID.2185-86).

The state court identified the clearly-established Supreme Court case law applicable to the closure of a courtroom, *Waller v. Georgia*, 467 U.S. 39 (1984).  The trial court characterized the closure that took place as a partial one.  Because there is no record of the closure, the Court defers to the court's characterization.  The state court correctly noted that *Waller* involved the complete closure of a courtroom and that it did not mandate applicability of the four point test in cases involving only a partial closure.  In the case of a partial closure, the only "clearly established [principle] for purposes of [a] partial closure [is] the general one that the trial court must balance the interests favoring closure against those opposing it."  *See Drummond v. Houk,* 797 F.3d 400, 404 (6th Cir. 2015).

Petitioner is not entitled to relief because there was no complete closure of the courtroom and the state court's reasoning that space considerations necessitated the partial closure was not an unreasonable application of clearly established Supreme Court precedent.

**2.**

Petitioner claims that his right to a public trial was also violated when the trial court excluded all but immediate family members from the courtroom midway through the fifth day of trial. The record shows that, on the fourth day of trial, the trial court judge issued this warning to spectators:

> I've actually witnessed and been advised that there is interaction between various family members seated in the audience. Just cut it out otherwise we're not gonna allow you back in here. Stop feuding with one another. You're not allowed to do that in this courtroom. Just cut it out. All right, that is the one warning you get.

(ECF No. 12-9, PageID.877-78.)

Midway through the next day, the trial court excluded all but immediate family members:

> All right, the time has come. I warned you. No interacting with the jurors. No doing anything to interfere with the jurors at all.

We're limiting who is now allowed in [the] courtroom. It's one degree away. It goes up parents, across brothers and sisters. No aunties no cousins. If you are not related to the defendants or the victims in that way, you get out now.

And counsel you have them tell you who the [sic] are related to within this courtroom. I'm not having this. You are not interfering with our jury. You're not to get on the elevators with the jury.

You can wait out there, but you can't be in the courtroom. You're not to talk to the jurors. You're not to follow them to their cars. You're not to do anything with our jury. I hope you understand that.

We're gonna kick you out. That's the end of it. You already got your warning. And I told you. That was the warning.

(ECF No. 12-10, PageID.1067-68.)

Petitioner did not expressly agree on the record to the partial closure of the courtroom, but defense counsel clearly failed to object. The Supreme Court has held that an attorney's failure to request an open court waives the defendant's right to a public trial. *See Levine v. United States*, 362 U.S. 610, 618 (1960) ("Had petitioner requested, and the court denied his wish, that the courtroom be opened to the public ... we would have a different case."); *Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009), abrogated on other grounds by *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) ("'[T]he Sixth Amendment right to a trial that is 'public,'

26

provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed.'") (quoting *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991)).

Moreover, even if this claim was not forfeited, Petitioner is not entitled to relief.  To justify the partial closure of a courtroom, the only clearly established federal law is that "the trial court must balance the interests favoring closure against those opposing it."  *Drummond v. Houk*, 797 F.3d 400, 404 (6th Cir. 2015).  Here, Petitioner does not rebut the trial court's determination that disruptive spectators, despite an earlier warning, threatened the integrity and fairness of the trial.  The expulsion of all extended family members from the courtroom reasonably balanced the need to maintain an orderly trial with the right to a public trial.  Habeas relief is denied on this claim.

## D.  Right to Present a Defense (Claim IX)

Next, Petitioner argues that the trial court violated his right to present a defense by preventing him from testifying about a statement made by Lester Lewis a year after the shooting.

27

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). While the right to present a defense is a fundamental tenet of due process, it is "not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). The exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id., citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987). In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (*quoting California v. Trombetta*, 467 U.S. 479, 485 (1984)). But "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

On federal habeas review, a court considering the exclusion of evidence must balance the state's interest in enforcing its evidentiary rules against the relevance and cumulative nature of the excluded evidence, and the degree to which the excluded evidence was "indispensable" to the defense. *Crane*, 476 U.S. at 691. State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted).

The trial court sustained a hearsay objection by the prosecutor to Petitioner's testimony that, when he and Lewis were in West Virginia about one year after the shooting, Lewis indicated that his facial injury was the result of a "mistake." Defense counsel sought to introduce the testimony as a prior inconsistent statement because Lewis testified at trial that his injury was caused by Keith Williams. The trial court sustained the prosecution's objection but Petitioner nevertheless was permitted to testify generally that Lewis's response "didn't involve … Keith Williams shooting him." (ECF No. 12-15, PageID.1865.) Petitioner claims that he was also denied his right to present a defense

29

when the court sustained the prosecution's objection to the question whether Lewis ever attacked Petitioner when they encountered one another in West Virginia or accused Petitioner of trying to kill him.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Defense counsel … was able to elicit testimony from Seabrooks indicating that he was given no indication that Lewis, while both men were in West Virginia, behaved in a manner to suggest he was fearful of Seabrooks or resentful of his participation in the events on Cruse Street.
>
> ***
>
> …Criminal defendants are guaranteed "a meaningful opportunity to present a complete defense." *People v. Unger*, 278 Mich.App 210, 249; 749 NW2d 272 (2008) (citations and quotation marks omitted).  The right to present evidence is not, however, absolute.  *Id*. at 250.
>
> A defendant's interest in presenting … evidence may thus bow to accommodate other legitimate interests in the criminal trial process.  States have been traditionally afforded the power under the constitution to establish and implement their own criminal trial rules and procedures…. Michigan has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials.  Our state has broad latitude under the Constitution to establish rules excluding evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. [*Id*. (citations and quotation marks omitted).]

30

> The omission of the referenced testimony did not preclude the ability of Seabrooks to present a defense. Seabrooks was permitted to testify that Lewis's response to an inquiry regarding his facial injury did not reference being shot by Williams or give any indication that he was fearful or resentful of Seabrooks for the events surrounding his injury. In addition, because the trial court did not abuse its discretion in excluding the statements, it did not deny Seabrooks his right to present a defense. *Id*.

*People v. Seabrooks*, No. 320320, 2015 WL 7574325, at *7-8 (Mich. Ct. App. Nov. 24, 2015)

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred as a matter of Michigan evidentiary law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review.").

Second, Petitioner fails to show that the trial court's evidentiary ruling was fundamentally unfair or deprived him of the right to present a meaningful defense. As discussed by the Michigan Court of Appeals,

Petitioner was able to present testimony describing the substance of his conversation with Lewis, including that Lewis did not link his facial injury to the shooting at issue here and that Lewis was not fearful of Petitioner. Petitioner fails to establish that the trial court deprived him of a fundamentally fair trial. Habeas relief is denied.

## E. Ineffective Assistance of Appellate Counsel (Claim X)

Petitioner argues that his appellate counsel was ineffective for failing to raise on direct review the claims raised in his post-conviction motion. Appellate counsel cannot be ineffective for failure to raise an issue that lacks merit. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Because Petitioner's underlying claims are without merit, appellate counsel was not ineffective for failing to raise them on direct review.

## F. Right of Confrontation (Claim XI)

Petitioner contends that his right of confrontation was violated by the prosecutor's reference in opening statement to anticipated testimony from co-defendant Demar Payne, who ultimately declined to testify and

was tried alongside Petitioner and other co-defendants. The prosecutor

referenced Payne's anticipated testimony in this way:

> You may hear testimony from Demar Payne. Demar Payne, remember was the one who rode in the Taurus with Keith Williams, as it drove away from Cruse Street. Demar Payne is gonna telling [sic] you what happened that night as well as Terrence Griggs. As well as Lester Lewis.

> I ask that you pay very close attention to what they tell you. They were there. The evidence is gonna show they were there. Yes, they made deals to testify, and they're gonna testify and tell you what happened that night.

Seabrooks, 2015 WL 7574325, at *11.

> The Michigan Court of Appeals denied this claim:

> While a Confrontation Clause issue can arise when a witness asserts the Fifth Amendment, it does not arise if a witness does not provide any substantive testimony. *People v. Gearns*, 457 Mich. 170, 186-187; 577 N.W.2d 422 (1998), overruled on other grounds *People v. Lukity*, 460 Mich. 484, 494; 596 N.W.2d 607 (1999). "A mere inference is simply insufficient for a Confrontation Clause violation." *Id*. The prosecutor generally referenced in his opening statement that Payne, a codefendant of Seabrooks, was anticipated to testify as a witness. Payne unexpectedly reneged on his agreement with the prosecutor and did not actually testify. Consequently, Payne did not provide any substantive testimony that was harmful to Seabrooks. Because the prosecutor only referred to a witness who never testified in the case, defendant's right to confront the witnesses against him was not violated by the prosecutor's remark in his opening statement.

*Id.* at *12.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 315 (1973). But it "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985). The testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify, and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004).

In this case, the right to confrontation was not implicated because Payne's statements were not admitted into evidence at trial and the prosecutor did not specifically detail the anticipated testimony. *See United States v. Porter*, 764 F. 2d 1, 9 (1st Cir. 1985) (holding that the right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial") (internal citations omitted). Additionally, the trial court instructed the jurors that counsel's statements were not evidence in the case. On this record, the state

court's holding was not contrary to, or an unreasonable application of, Supreme Court precedent.

## IV. Conclusion

The Court concludes that Petitioner is not entitled to federal habeas relief.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.   28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).   A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that jurists of reason would not find the Court's procedural ruling debatable.   Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision may be taken in good faith.  Accordingly, the Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal.  *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.

DATED: August 29, 2022   s/Terrence G. Berg
 TERRENCE G. BERG
 UNITED STATES DISTRICT JUDGE